IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2018

## JERIMYAH SHERRELL SHUTT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Henderson County**
No. 17168-1        Roy B. Morgan, Judge

_____

### No. W2018-00378-CCA-R3-PC

_____

The Petitioner, Jerimyah Sherrell Shutt, pleaded guilty to especially aggravated robbery, and the trial court sentenced him to fifteen years in the Tennessee Department of Correction. The Petitioner subsequently filed a *pro se* petition for post-conviction relief, alleging that his counsel had rendered ineffective assistance. The post-conviction court appointed counsel and, after a hearing, denied relief. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR. and ROBERT H. MONTGOMERY, JR., JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Jerimyah Sherrell Shutt.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Jody S. Pickens, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts
### A. Guilty Plea Hearing

This case arises from the Petitioner's unlawfully obtaining property by violence and with a deadly weapon, which resulted in the owner of the property suffering serious bodily injury. In lieu of a trial, the Petitioner accepted a plea offer and, at his plea hearing, stipulated the facts as presented in the indictment were substantially correct. The indictment articulated the facts as follows:

JEREMIYAH SHERRELL SHUTT on or about February 01, 2016, in

Henderson County, Tennessee, and before the finding of this indictment, did unlawfully, knowingly and/or intentionally obtain property by violence and accomplished with a deadly weapon, to-wit: a rubber mallet, a more particular description of which to the Grand Jurors is unknown, with the intent to deprive the owner of the property, and as a result of which TIMOTHY DOURIS was assaulted by the said JERIMAYAH SHERRELL SHUTT and suffered serious bodily injury, in violation of T.C.A § 39-13-403, all of which is against the peace and dignity of the State of Tennessee.

The trial court ensured the Petitioner understood the rights he was waiving by entering a guilty plea. It then accepted his guilty plea to especially aggravated robbery and driving on a revoked driver's license, fourth offense. The trial court imposed the agreed-upon sentence of fifteen years.

## B. Post-Conviction Facts

The Petitioner subsequently filed a *pro se* petition for post-conviction relief, in which he alleged that he had received the ineffective assistance of counsel both before and during his plea hearing because his trial counsel ("Counsel") did not explain or review discovery with the Petitioner; did not respond to multiple letters sent to him by the Petitioner; filed only one of multiple motions that the Petitioner requested; did not speak with or meet with the Petitioner until the day of the plea hearing; failed to contact and subpoena witnesses on the Petitioner's behalf; and was hospitalized before the plea hearing and thus did not properly prepare for the Petitioner's trial.

The post-conviction court appointed post-conviction counsel, who filed an amended petition contending that, but for Counsel's errors, the Petitioner would have gone to trial instead of entering a guilty plea. The petition included the Petitioner's assertion that Counsel did not review discovery or talk with him until the day he entered his guilty plea. Therefore, the Petitioner asserted he did not have all the information necessary to knowingly and voluntarily enter a guilty plea, and that Counsel's representation fell below a reasonable standard as defined in *Strickland v. Washington* because, but for Counsel's unprofessional errors, the result of the proceeding would have been different.

At a hearing on this petition, the parties presented the following evidence: The Petitioner testified that Counsel had been appointed to represent him, but that while his charges were still pending, the Petitioner had requested a change in counsel, because "he wasn't representing me to the best of his ability," and, "didn't come talk to me about the case." The Petitioner testified that the trial court denied his motions to replace Counsel.

2

The Petitioner testified that he had been unable to go over the discovery evidence and had met with Counsel only once for five minutes prior to entering his guilty plea. The Petitioner further testified that Counsel had failed to contact family members to testify on his behalf and that he had written "five or six" letters to Counsel without receiving any response.

The Petitioner testified that he did not believe he had had ample time to discuss the pros and cons of taking his case to trial with Counsel.

During cross-examination, the Petitioner agreed that he had met with Counsel to make a counter offer to the State's initial plea offer and that as a result of this meeting, the Petitioner had submitted a counter offer to the State. The Petitioner agreed that he had responded "yes" when the trial judge asked him if he was happy with Counsel's representation at his plea hearing. The Petitioner agreed that the trial judge had gone over the Petitioner's rights with him at the guilty plea hearing, including that the Petitioner had a right to call witnesses to testify on his behalf and that Petitioner was giving up those rights by entering a guilty plea. The Petitioner agreed that he had told the trial judge that he understood those rights and that he understood his guilty plea would end the case with regard to the Petitioner's guilt.

Asked at what point, then, did the Petitioner become unhappy with what happened, the Petitioner responded, "When I first came to the Circuit Court and asked for new representation." Though the Petitioner agreed that he had told the trial judge he was happy with Counsel's representation at his guilty plea hearing, the Petitioner testified, "He'd done told me no on replacing him."

Asked whether he thought his Counsel had anything to do with creating plea offers from the State, the Petitioner testified, "I was wanting to take it to trial, but not being able to be in contact with [Counsel], I was kind of scared to do so." The Petitioner agreed that he had not told the trial judge of these concerns, saying instead, "I thought it was the best choice as to petitioning afterwards."

Counsel testified that he had worked as a public defender in Henderson County for over twelve years. Counsel testified that he had previously represented clients facing charges of especially aggravated robbery. Counsel testified that he had represented the Petitioner on two charges; one for especially aggravated robbery and the other for driving on a revoked license.

Counsel recounted their receipt of the initial plea offer from the State, which was fifteen years at 100% for the especially aggravated robbery charge and that the other charge was a misdemeanor charge. Asked about the Petitioner's allegation they had met

3

only once before the guilty plea hearing, Counsel testified, "I disagree with that." He explained that he had met with the Petitioner five times over the period from mid-June until October when the plea was completed, specifically on June 22, July 14, July 18, September 14 and October 5, 2016.

Counsel testified that, during those meetings they had discussed the Petitioner's case in great detail because "the alleged victim in this case sustained extensive injuries . . . ." The two discussed Counsel's opinion as to the weaknesses in the Petitioner's case. Counsel further testified that he and the Petitioner "also talked about witnesses for him, for himself, and he shared with me that he did not have any witnesses."

Asked whether the Petitioner had ever asked him to contact any family members regarding his case, Counsel testified, "That may have happened; I don't recall that part of it." Asked whether any family members had attempted to contact him, Counsel testified that he had "never heard from them."

Counsel recalled receiving two letters from the Petitioner after representing him in general sessions court and two more, "around the time we were talking about doing the counter offer and that sort of thing." Counsel testified that he did not respond to the Petitioner in writing because Counsel was going to visit the Petitioner in jail, and the two could discuss the substance of the letters at that time. Counsel recalled that he discussed with the Petitioner the counter offer he had sent to the District Attorney and that she had rejected that offer.

Counsel testified that the Petitioner was scheduled for trial in November and was facing a range of fifteen to twenty-five years if convicted of especially aggravated robbery. Counsel testified that the Petitioner's counter offer "related to trying to get it down to a lower level felony where we were asking for 12 years at 30 percent, which was rejected. So that left us with only the [State's] minimum plea offer that we had which was the minimum plea for that particular charge" and that though the mid-September plea cutoff date had passed, the Petitioner was still allowed to accept the minimum plea offer.

Counsel testified that he did not recall any particular motions the Petitioner wanted or had expressed his desire to be filed. Counsel testified that he advised the Petitioner that, since the Petitioner's case was set to go to trial in November:

> this [wa]s going to be the last opportunity. We were already past the plea cutoff date, that I'd be more than happy to go to trial with him because we'd gone over the facts numerous times, [but] that potentially, if he did not have a witness that he could bring forth for me to support us to help us with the case, that our case would be weak and he could potentially serve

4

something more than 15 years if he was convicted at trial. And I think that's what motivated him to take the 15 years, because that was the minimum.

Counsel testified he had been on medical leave in September 2016, but that he was having no health issues at that point in time.

Responding to a follow-up question about whether he might have told the Petitioner's family members that he couldn't speak with them because of the facts of the case, Counsel responded, "That's possible. I get a lot of calls from family members wanting to talk about someone's case. If I don't represent them, I tell them that's between me and the client."

On cross-examination, Counsel confirmed that he had received a notice of enhancement filed by the State regarding the Petitioner's two prior felony convictions, and that he had gone over the notice with the Petitioner. Counsel testified that this was a consideration in their decision of whether to go to trial.

Based upon this evidence, the post-conviction court denied the Petitioner relief, finding that:

> The Petitioner has failed to establish his burden of proof, by clear and convincing evidence, as to any issues of ineffective counsel claims.
>
> Specifically, the Court finds the Petitioner failed to establish by clear and convincing evidence [Counsel] failed to complete discovery. The Court finds [Counsel] did complete discovery and discovery was reviewed by the Petitioner.
>
> The Court further finds Petitioner failed to establish by clear and convincing evidence [Counsel] erred by failing to communicate with the Petitioner. [The] Court finds [Counsel] did communicate with the Petitioner on numerous occasions, which were documented by [C]ounsel.
>
> Any other issues raised by Petitioner in his Petition(s) are hereby denied for lack of proof being offered or submitted to the Court for consideration.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

5

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition for post-conviction relief because Counsel's representation fell below the range of competence demanded of attorneys in criminal cases. The Petitioner argues that both prongs in *Strickland* have been met and he has proven by clear and convincing evidence that his Counsel was ineffective. The State counters that the post-conviction court properly dismissed the petition. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id*. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at page # This standard also applies to claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on

going to trial." *Id.* at 59.

Contrary to the Petitioner's assertion that they had met only once, Counsel testified that the two men met on five specific dates to discuss issues related to the State's initial plea offer and the Petitioner's counter offer. The post-conviction court accredited Counsel's testimony. Counsel testified that he confirmed with the Petitioner that they were ready for trial, but that without any witnesses to support the Petitioner, their case was weak, and the Petitioner's chance of a longer sentence was significant. The Petitioner elected to accept the plea offer of his own volition and at the plea hearing testified that he was both happy with Counsel's representation to date and that he understood all the particulars of his plea. The Petitioner has not shown that, but for Counsel's allegedly ineffective representation, he would have proceeded to trial. Accordingly, the post-conviction court did not err when it found the Petitioner had not proven that he was entitled to post-conviction relief.

Similarly, the Petitioner is not entitled to relief based on his assertion that Counsel had been ineffective by not contacting witnesses that might testify on his behalf at trial. Counsel did not recall any such requests and confirmed that he had no records of any calls from family members that might have come to his office on behalf of the Petitioner. The Petitioner asserts that had Counsel contacted these witnesses, Counsel would have gained information. The Petitioner failed to present any witnesses at the post-conviction hearing to support his assertion that Counsel provided ineffective counsel based upon his failure to call such witness. A petitioner is not entitled to relief on these grounds "unless he can produce a material witness [at the evidentiary hearing] who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." *See Black v. State*, 794 S.W.2d 752, 756 (Tenn. Crim. App. 1990). The Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

8